UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 6:21-CR-049-H |
| DIEGO DURON HERNANDEZ, | |
| Defendant. | |

## ORDER

Before the Court is defendant Diego Duron Hernandez's motion for early release "under the Compassionate Release Cares Act." Dkt. No. 63. That motion is denied.

**1. Hernandez's History of Escape and Reincarceration**

Hernandez has a lengthy criminal history. When he was 14, he was convicted of aggravated assault. As an adult, he has convictions for criminal mischief, two convictions for possession of a controlled substance, forgery, two convictions for failure to identify as a fugitive, possession of a prohibited weapon, and evading arrest. Since his narcotics convictions were felonies punishable by more than one year in prison, when he sold an AK-47 and then bragged about it to law enforcement, he admitted to a federal crime, namely being a convicted felon in possession of a firearm. He was indicted, pled guilty, and sentenced by the Honorable Judge Sam Cummings on February 3, 2012 to 57 months in federal custody, followed by a three-year term of supervised release. *See* Case No. 6:11-CR-036, Dkt. Nos. 35-1, 41.

Prison life was not to his liking, however, so in July 2015 he escaped. *See* Case No. 6:17-CR-001, Dkt. No. 18 at 10. A grand jury in the Western District of Texas returned a one-count indictment charging Hernandez with Escape from Custody. *See* W.D. Tex. Case

No. 7:15-CR-182. And, in January 2016, the Honorable Judge Robert Junell sentenced Hernandez to 15 months in custody, to be served consecutively to the sentence imposed by Judge Cummings, along with a three-year term of supervised release, also to be served consecutively with the term imposed by Judge Cummings.

Hernandez was finally released from custody on January 6, 2017, but he failed to comply with the terms of his supervised release. *See* Case -036 Dkt. No. 66; Case No. -001 Dkt. No. 19. On September 8, 2017, Judge Cummings revoked Hernandez's supervised release in both cases and sentenced him to 12 months in custody in Case No. -036 and 14 months in custody in Case No. -001, to be served consecutively. Concurrent terms of supervised release of 18 months were also imposed. Case No. -036 Dkt. No. 72; Case No. -001 Dkt. No. 21.

Which leads us to this case. Remember, Hernandez does not like prison. So, on May 15, 2019, he left. Dkt. No. 18. Of course, he had no permission to do so, so he was arrested and indicted accordingly. *Id.* After he pled guilty to escaping from federal custody for a second time, the Honorable Chief Judge Barbara Lynn sentenced Hernandez on August 20, 2020 to 18 months in federal custody and a three-year term of supervised release. Dkt. No. 37. Hernandez had been in pretrial detention since May 2019, so by the time judgment was entered, he had served the vast majority of his sentence; he was released on November 6, 2020. Dkt. Nos. 1; 37; 39. No appeal was filed. Jurisdiction over Hernandez's supervised release was transferred to the San Angelo Division in July 2021. Dkt. No. 39.

But Hernandez had already violated the terms of his supervised release by the time his supervision was transferred. Dkt. No. 40. The government thus moved to reincarcerate

Hernandez, Dkt. No. 45, and he was arrested on a warrant issued by the Honorable Magistrate Judge John Parker in September 2021. On November 30, Hernandez pleaded true to the violations, Dkt. No. 61, and the Court sentenced him to 13 months in federal custody—consecutive to unrelated state charges—to be followed by a further 12 months of supervised release, Dkt. No. 62.

## 2. Hernandez's Request for Leniency

Now, Hernandez wants to go home. Hernandez says that his mother is sick—she is 74, disabled, and has a pacemaker. Dkt. No. 63 at 1. His father is sick, too, but Hernandez provides no detail. He writes that his "life over the years has been a roller coaster with many ups and downs losing everything & everyone I cared and love leaving me with just [my parents]." *Id.* And he regrets "so many years wasted, the things we take for granted, and how short life is." *Id.* While he was (briefly) released last year, he saw how drugs were still sold on his streets and it reminded him of how drugs ruined his life (recall: the predicate for Hernandez's original felon-in-possession charge was narcotics distribution). *Id.* He insists that he is willing to comply with his supervised release conditions. *Id.* He says he only has about six months left to serve.[1] Accordingly, the Court will expeditiously resolve his motion: it is denied.

## 3. Hernandez Has Shown Zero Respect for the Law

The Court assumes that Hernandez is seeking relief under the First Step Act, rather than the CARES Act—or "Compassionate Release Cares Act," as Hernandez puts it, Dkt. No. 63 at 1—if for no other reason than that the CARES Act gives Courts no power to modify the duration or conditions of a defendant's incarceration.

---

[1] But 13 − 4 = 9.

For the Court to grant a defendant's motion to reduce his sentence pursuant to the First Step Act, the defendant must have administratively exhausted his requests with the BOP. 18 U.S.C. § 3582(c)(1)(A). Hernandez offers no evidence that he has done so, which is one reason his motion is denied.[2]

Even if he has, the outcome would be the same because Hernandez cannot demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). When deciding whether to modify a term of imprisonment, the Court must "consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Sentence reductions must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. The relevant policy statement for Section 3582 lays out several circumstances that would qualify as "extraordinary and compelling reasons" to reduce a prison term: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP. *See* USSG § 1B1.13, cmt. 1.

The 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the

---

[2] In the normal course, the Court would ask the government to respond to the defendant's motion and ask that the response include evidence as to whether the defendant has administratively exhausted his BOP remedies. But because Hernandez's motion will be denied regardless of what the government says, the Court will not waste further taxpayer resources.

need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.

Here, the nature and circumstances of Hernandez's offense, by definition, counsel against releasing him. Hernandez is presently incarcerated for violating the conditions of a term of supervised release imposed after he escaped from federal custody. While other offenses may weigh in favor of a reduced sentence, any escape from custody does not.

Hernandez's history and characteristics likewise counsel against a reduced sentence. The defendant has not only escaped from custody *twice*, but his supervised release has been revoked multiple times. Hernandez's history of failing to conform his conduct to the law is so consistent, so extreme, that it is more indicative of an inability to do so than an unwillingness. No fewer than ten federal judges have been involved in Hernandez's malfeasance.[3] His choices, at every turn, demonstrate a lack of respect for the law. Such blatant disrespect, coupled with a history of continual noncompliance and pending state assault charges (*see* Dkt. No. 98-1), render him a danger to society. The remaining 3553(a) factors are largely inapposite in this context, but to the extent they are relevant, the Court concludes that they could not—alone or together—counterbalance the Court's need to protect the public, provide adequate deterrence, and promote respect for the rule of law— the factors which led the Court to conclude that a sentence of 13 months was sufficient, but not greater than necessary, in this case. Any reduction—anything less—would not be sufficient given Hernandez's sordid history.

---

[3] Judges Cummings, Junell, Lynn, and Hendrix and Magistrate Judges Frost, Tolliver, Bryant, Parker, Koenig, and now-District Judge Counts have all encountered Hernandez.

Moreover, Hernandez has identified no medical conditions that would counsel in favor of compassionate release and, at 42 years old, his age does him no favors, either. That Hernandez's mother and father are aging and ill is unfortunate. But pacemakers are quite common—roughly 1.5 million Americans live with the help of one. With no other information as to the ailments his mother and father face, the Court is left only to observe that there is nothing extraordinary or compelling about an elderly couple undergoing the normal aging process.

Indeed, the only thing that is extraordinary about Hernandez's request is that it came at all. And while the Court applauds him for asking for permission before leaving prison this time, the answer is still "no." The defendant's motion for compassionate release (Dkt. No. 63) is denied.

So ordered on January 31, 2021.

                                            JAMES WESLEY HENDRIX
                                            UNITED STATES DISTRICT JUDGE